per curiam:
El peticionario Víctor Ramírez de Arellano fue admitido al ejercicio de la abogacía en el Estado Libre Asociado de Puerto Rico el 20 de enero de 1989. Fue sus-pendido el 23 de diciembre de 1996 y comparece para soli-citar su reinstalación al ejercicio de la profesión.
I
Los autos indican que el peticionario fue acusado en el Tribunal de Distrito de Estados Unidos para el Distrito de Puerto Rico por el delito de posesión de cocaína con inten- *823 ción de distribuirla. Hizo alegación de culpabilidad y desde su arresto en 1994 cooperó con las autoridades federales en investigaciones confidenciales contra el trasiego de drogas. El 26 de septiembre de 1996, el Tribunal de Distrito de Estados Unidos para el Distrito de Puerto Rico impuso al peticionario una sentencia de cuatro años de libertad supervisada. Ante esto, el 23 de diciembre de 1996 ordena-mos la separación inmediata y definitiva del peticionario de la práctica de la abogacía y el notariado en esta jurisdicción. Véase In re Ramírez de Arellano, 142 D.P.R. 190 (1996).(1)
El peticionario cumplió con los términos y las condicio-nes impuestos por la sentencia del foro federal y el 29 de septiembre de 2000 se expidió una certificación acredita-tiva de ese hecho. Cinco años después, el 8 de noviembre de 2005, el peticionario solicitó ser reinstalado al ejercicio de la abogacía. Referimos la petición de reinstalación al Pro-curador General y a la Comisión de Reputación de Aspi-rantes al Ejercicio de la Abogacía. Ambas entidades some-tieron sus informes y el peticionario respondió a éstos.
En cumplimiento de su encomienda, la Comisión celebró unas vistas el 30 de agosto y el 26 de octubre de 2006. El peticionario Víctor Ramírez de Arellano se representó por derecho propio durante todo el proceso. También participó el Ledo. Alcides Oquendo Solis, en su carácter de Procura-dor Especial de la Comisión. Concluida la presentación de la prueba testifical el 11 de enero de 2007, la Comisión le concedió tanto al Procurador General como al peticionario un término para someter por escrito sus respectivas *824 posiciones. El Procurador General sometió su informe y el peticionario una Moción de réplica al informe.
Las vistas fueron de carácter público. Además de su tes-timonio, el peticionario presentó cuatro testigos: Dr. Ariel Sepúlveda, Dr. José Manuel del Río Ferrer, el padre Fa-bián Rodríguez Rodríguez y la Sra. Yelitza Paz Ramírez de Arellano, esposa del peticionario. Estos testigos testifica-ron sobre el comportamiento del peticionario después de la suspensión. El peticionario explicó las razones que él en-tiende que le acreditan para recuperar la oportunidad de ofrecer servicios legales en esta jurisdicción.
En su informe a la Comisión, el Procurador General ex-puso los testimonios vertidos en la vista. Pasamos a resu-mirlos a continuación.
El Dr. Ariel Sepúlveda Cuevas testificó que es ingeniero de profesión y que conoció al peticionario en actividades en la parroquia del Buen Pastor, particularmente de los niños escuchas. Indicó que el peticionario fue un recurso bien importante en las actividades, por sus destrezas y conocimientos. El peticionario le informó sobre su convic-ción desde el principio y su amistad ha transcendido al punto de que es padrino de uno de sus hijos.
El doctor Sepúlveda Cuevas declaró que nunca ha escu-chado nada negativo del peticionario y opinó que éste goza de buena reputación en su comunidad. También explicó que el peticionario se ha encargado de unos sobrinos y los ha criado, junto con su esposa, como si fueran hijos propios. Nunca ha visto al peticionario en compañía de per-sonas extrañas con apariencia de narcotraficantes. Ade-más, al testigo le gustaría que el peticionario fuera su abogado.
El Dr. José Manuel Del Ríos, médico internista de pro-fesión, testificó que conoce al peticionario desde hace más de diez años. Ha hecho negocios con el peticionario en el campo de la construcción y declaró que en ese campo el peticionario se distingue por ser tenaz y dedicado. Ha vi- *825 vido por años en el mismo vecindario del peticionario y lo considera una persona honorable. El testigo nunca ha pre-senciado eventos que le hagan pensar que el peticionario está involucrado en actividades relacionadas al narcotráfico. Además, supo los detalles de la convicción por boca del propio peticionario. Aunque no ha compartido con el peticionario socialmente, tiene amistades en común con él y comparten actividades como los niños escuchas, Centro Espibi (para personas con necesidades especiales) y la parroquia.
El padre Fabián Rodríguez es el párroco de la iglesia Católica del Buen Pastor en Mayagüez. Lleva cuarenta años en el sacerdocio y pertenece a la Orden de los Jesuitas. Informó que conoció al peticionário hace dos años, desde que comenzó a dirigir la parroquia, pues el peticionario y su esposa estaban involucrados con la litur-gia de los niños y las actividades para jóvenes. De hecho, el peticionario ofreció una charla sobre el aspecto legal de las drogas. Opina que el peticionario es una persona sensata, responsable, honesta, íntegra, comprometida y amigable. El testigo indica que se enteró de que el peticionario es un convicto federal como resultado de este procedimiento, si-tuación que pudiera tener algún efecto en la participación del peticionario con niños y jóvenes en la parroquia.
La Sra. Yelitza Paz de Ramírez de Arellano es la esposa del peticionario desde el 14 de agosto de 1993 y han convi-vido ininterrumpidamente desde ese entonces. Considera a su esposo un hombre cabal, respetuoso, trabajador y no se explica cómo delinquió. Es cumplidor con la sociedad y buen vecino. Aunque no tienen hijos, han criado a unos sobrinos como si lo fueran. Declaró que el peticionario no ha fungido como abogado luego del desaforo, aunque se mantiene al día estudiando en la computadora y leyendo materiales y libros que tiene en la casa. Utiliza sus cono-cimientos legales para aplicarlos a su negocio y a un caso que tiene, donde está representado por abogado.
*826 Por su parte, el peticionario ofreció una descripción de-tallada de cómo se involucró en el tráfico de drogas y pos-teriormente, al ser arrestado, cooperó con la Fiscalía sir-viendo de encubierto, donde en ocasiones temió por su vida. Explicó que, cuando practicaba la profesión, se dedicó al área criminal y que, por hacerle un favor a un cliente, le ofreció sus oficinas para que se encontrara con otro narcotraficante. Eventualmente, terminó traficando droga. Declaró que está sumamente arrepentido de sus errores y del daño que le causó a sus padres y a su esposa. Sintió mucha vergüenza y aún se siente avergonzado. Asegura que no caerá en conducta similar ni en ninguna que atente contra los principios de la profesión ni la ética. Además, estaba bien orgulloso y disfrutaba de ejercer su profesión. De ser reinstalado, el peticionario ofreció dar charlas en las escuelas de Derecho sobre el peligro potencial de invo-lucrarse con los clientes en casos criminales y cómo es po-sible comprometerse con el cliente hasta el punto de delinquir.
Luego de resumir los testimonios, el Procurador General concluyó lo siguiente:
No tenemos duda alguna que el peticionario goza de buena reputación en la comunidad donde reside y donde se desenvuelve. Tampoco tenemos duda de que el peticionario está arrepentido de su conducta delictiva y anti-ética previa. Aunque tampoco cuestionamos su interés en el derecho, la lec-tura y la utilización de sus conocimientos para aplicarlos en sus negocios, entendemos que podría beneficiarse de un curso de repaso de reválida, tal y como se le ha solicitado a otros peticionarios en ocasiones anteriores; esto, por el tiempo que ha transcurrido desde su desaforo y la falta de alusiones más concretas y específicas sobre materia de derecho.
El interés público se beneficiará al contar con un abogado que esté al tanto del desarrollo más reciente del derecho como también se beneficiará — por conducto de estudiantes de dere-cho y futuros abogados — de las charlas que ofreció el peticio-nario para compartir su experiencia muy particular. Informe del Procurador General, pág. 8.
Los hallazgos de la Comisión, según constan en su in- *827 forme, a partir de las presentaciones orales y de los docu-mentos sometidos, son los siguientes:
1. El peticionario se dedicó básicamente a una práctica criminal en Mayagüez, pueblo en el que nació, desde que juramentó ante el Tribunal Supremo de Puerto Rico en 1989. Su práctica era bastante exitosa y empezó a atender clientes con asuntos de drogas y sustancias controladas. La asesoría legal a alguno de estos clientes excedió los límites apropiados y comenzó a participar en la facilitación de negocios delictivos de distribu-ción de drogas [.] Fue arrestado por agentes federales y co-menzó en 1994 a cooperar con las autoridades federales por-que desde un principio aceptó que se había apartado de los valores que le habían inculcado sus padres. De hecho, se cues-tionaba c[ó]mo había sido tan inmaduro. Es decir, el [peticionario ha estado arrepentido de los hechos que cometió desde antes de que fuera sentenciado y ha hecho todo lo posible para subsanar ese error de juicio. Estuvo aproximadamente dos años viviendo en el área metropolitana como confidente federal y eventualmente en 1996 fue condenado bajo los tér-minos de una sentencia muy favorable (cuatro años de liber-tad supervisada).
2. El peticionario regresó a Mayagüez en 1998 y comenzó a dedicarse a dirigir una empresa de construcción, oficio al cual sigue dedicado al presente. Ha obtenido la licencia de corredor de bienes raíces.
3. Desde que regresó a Mayagüez participa activamente en la parroquia de su vecindario y fue líder de la tropa de niños escuchas. De hecho le explicó a los organizadores de su convic-ción y aunque a nivel de distrito no había objeción a nivel regional s[í] se opusieron y se retiró del trabajo activo en la tropa después de varios años de labor meritoria y responsable.
4. El peticionario nunca ha sido usuario de drogas [o] sustan-cias controladas. No mantiene relaciones de trabajo o sociales con personas que puedan relacionarse con conducta antisocial o con reputación negativa en su comunidad.
5. El peticionario siempre ha explicado con candidez que fue separado de la profesión legal por razón de una convicción relacionada con tráfico de drogas. Aunque en la comunidad de su vecindario y el mundo comercial de Mayagüez se sabe de esos hechos el [peticionario ha logrado recuperar su buena reputación y prestigio. El testimonio de los testigos no dejan duda sobre la buena imagen del [peticionario en estos momentos. Todos ellos atestiguan elementos de honestidad, responsabilidad, diligencia y sobre todo confiabilidad en la persona del [peticionario.
*828 6. El [pjeticionario se ha mantenido al tanto de los desarrollos en el Derecho mediante uso de los espacios cibernéticos del Co-legio de Abogados de Puerto Rico y de LexJuris. También ha tomado seminarios en el Instituto Hostosiano. Por demás, sus labores en el mundo de la construcción le ha requerido entrar en contacto con abogados representen [sic] en asuntos adminis-trativos o judiciales o funcionarios gubernamentales para que le concedan autorizaciones por lo que ha-tenido oportunidad de repasar esos conceptos legales. También lee los últimos desa-rrollos legislativos como el nuevo Código Penal y lo comenta con amigos abogados.
7. Con excepción de la suspensión indefinida no existe quere-lla o reclamación alguna de naturaleza ética (antes o después de la convicción por delitos graves) presentadla] contra el [peticionario en el Colegio de Abogados de Puerto Rico, la Ofi-cina del Procurador General o el Tribunal Supremo de Puerto Rico.
8. Como parte de su compromiso moral de ayudar a otras per-sonas a no cometer los errores que [é]l cometió ha dado charlas con la Policía de Puerto Rico sobre drogas. [É]l mismo expuso que aceptaría de buen grado que le requieran como condición de admisión el ofrecer charlas sobre este tema a los estudian-tes de Derecho o abogados. (Énfasis nuestro.) Informe de la Comisión de Reputación de Aspirantes al Ejercicio de la Abo-gacía, pág. 2.
Analizados los hallazgos de su investigación, la Comi-sión acordó recomendar la reinstalación del Sr. Víctor Ra-mírez de Arellano al ejercicio de la abogacía en Puerto Rico.
I — I l-H
En In re Pacheco Nieves, 135 D.P.R. 95, 99 (1994), expusimos los criterios generales que debían tomarse en consideración al evaluar una solicitud de reinstalación:
... la persona que solicita ser reinstalada al ejercicio de la profesión de abogado tiene la obligación de demostrar no sólo que el término de la suspensión, o separación, de la profesión decretada ha sido uno suficiente, sino que debe demostrar que goza de buena reputación y que su integridad moral, al mo-mento de la solicitud de reinstalación, le hacen merecedor de ser readmitido al ejercicio de la profesión de abogado.
*829 El peso de probar su integridad moral recae sobre el peticionario, quien debe demostrar “que su conducta moral ha variado hasta alcanzar el grado y medida necesarios en que ese atributo resulta indispensable para estimarle ca-pacitado para descargar intelectual y éticamente los debe-res y obligaciones que se esperan de todo abogado”. In re Cardona Vázquez, 112 D.P.R. 686, 689 (1982).
Cuando el peticionario ha sido separado del ejercicio de la abogacía por una convicción criminal, su inocencia o culpabilidad no debe ser relitigada en el proceso de reinstalación. Como explicamos en In re Pacheco Nieves, supra, pág. 99: “La controversia a dilucidar, en estos momentos, es si la conducta del peticionario lo hace, hoy día, merecedor de ser abogado.”
Luego de analizar todos los elementos presentes en este caso, concluimos que el Sr. Víctor Ramírez de Arellano ha cumplido con su obligación de presentar una prueba ro-busta y convincente que justifica su reinstalación. Su tes-timonio y el de los testigos presentados ante la Comisión, unido a la recomendación de ésta y la del Procurador General, nos convence de que ha logrado su rehabilitación. El peticionario ha demostrado que tiene, actualmente, la in-tegridad de carácter necesaria para ofrecer una represen-tación legal digna y confiable a los ciudadanos de este país. Las personas que se han relacionado con él desde que cum-plió su sentencia no tienen dudas respecto a su competen-cia, pero más importante, no tienen dudas en lo que res-pecta a su solvencia moral y ética. Además, la Comisión concluyó que el peticionario se ha mantenido al día en el estudio de temas jurídicos. Coinciden los comisionados con la opinión del Procurador General de que la readmisión del peticionario a la práctica de la profesión legal no consti-tuye una amenaza a sus potenciales clientes, el sistema de administración de justicia o a la imagen de la profesión legal. Procede, por lo tanto, decretar la reinstalación de Víc *830 tor A. Ramírez de Arellano al ejercicio de la profesión de abogado.

Se dictará sentencia de conformidad.

El Juez Asociado Señor Rivera Pérez no interviene.

 El peticionario había solicitado por derecho propio la renuncia voluntaria a la profesión legal el 18 de septiembre de 1996, lo cual se le concedió mediante una resolución el 11 de octubre de 1996. Después de emitida esa resolución, el Procurador General de Puerto Rico nos informó sobre el arresto y la alegación de culpabilidad del peticionario. Al amparo de la See. 9 de la Ley de 11 de marzo de 1909 (4 L.P.R.A. see. 735) se puede desaforar a aquellos abogados que fuesen convictos por un delito grave que implique depravación moral. Reconsideramos entonces la renuncia voluntaria, la dejamos sin efecto y se procedió a cumplir con lo dispuesto en el precepto legal antes indicado. In re Ramírez de Arellano, 142 D.P.R. 190 (1996).